<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                                
                United States Court of Appeals
                    For the First Circuit

No. 99-1361

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

                   RUB
N RODR GUEZ-DE JES S,

                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
        [Hon. Salvador E. Casellas, U.S. District Judge]

                             Before

                    Torruella, Chief Judge,
               Stahl and Lynch, Circuit Judges.
                                
                                
                                
 Anita Hill-Adames, Assistant Federal Public Defender, and
Joseph C. Laws, Jr., Federal Public Defender, on brief for
appellant.
 Camille Vlez-Riv, Assistant U.S. Attorney, Guillermo
Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant
U.S. Attorney, on brief for appellee.
                                
                                
                                
                                
                      February 16, 2000
                                
                                
                                
                               

 LYNCH, Circuit Judge.  Rubn Rodrguez-De Jess (Rodrguez)
appeals the denial of his motion for a new trial, which alleged
prosecutorial misconduct.  Rodrguez argues that the prosecutor's
statement that "he [Rodrguez] also lied" was sufficiently
prejudicial to warrant a new trial, and that the district court
abused its discretion in denying his motion.  Given the
circumstances in which the statement was made, we affirm the
district court's decision.
                              I
 In September 1996, Rodrguez submitted a claim to the
Federal Emergency Management Agency (FEMA) for damage caused by
Hurricane Hortense to a house that he stated was his principal
place of residence.  Rodrguez received a $4,915 grant for repairs
to the house and a $1,671 grant for rental assistance.  On April
22, 1998, Rodrguez was indicted on two counts of fraud against the
United States.  The first count was for making a false statement in
a matter within the jurisdiction of a federal agency, 18 U.S.C.
1001; the second count was for making a false claim to a federal
agency, 18 U.S.C.  287.  The indictment alleged that the house for
which Rodrguez had received FEMA assistance had not actually been
his principal place of residence at the time of the hurricane.  If
the house that was destroyed had not been Rodrguez's principal
place of residence, he would not have qualified for the grants he
received from FEMA; at best, he would have only qualified to
receive a loan.
 During the trial, Juanita Carrin Vasquez (Carrin), the
government's chief witness, testified that she rented the house in
question from Rodrguez, and that the house was not Rodrguez's
principal residence.  Carrin herself requested and received from
FEMA rental assistance and compensation for property in the house
that was destroyed by the hurricane.
 On August 6, 1998, a jury convicted Rodrguez on the
first count and acquitted him on the second.  Rodrguez was ordered
to serve one hour of imprisonment at the U.S. Marshals' office, pay
a $100 special monetary assessment, and make restitution of $6,586.  
Rodrguez made timely motions for judgment of acquittal, Fed. R.
Crim. P. 29(c), or, in the alternative, for a new trial, Fed. R.
Crim. P. 33, which the district court denied.  Rodrguez appealed
the denial of his motion for a new trial.
                              II
 This appeal focuses on one statement by the prosecutor.  
Prosecution witness Carrin testified that she had been renting the
house from Rodrguez for more than three years before the hurricane
struck, and that Rodrguez did not live there himself.  In his
testimony, Rodrguez stated that he had never agreed to rent the
house to Carrin, but that he had been letting her and her children
stay there for free as a favor.  He testified that shortly before
the hurricane he had separated from his wife and moved into one of
the rooms in the house in which Carrin was living.  Carrin denied
that Rodrguez had moved into the house.
 Rodrguez said that after the hurricane, in an effort to
help Carrin get housing assistance, he had lied to Sylvia Guzman,
a representative of the Housing Department, by telling her that
Carrin had been paying him $300 rent each month.  He also
testified that he called Guzman back later and confessed to having
lied to her about Carrin's having paid rent.
 After the defense had rested, the government informed the  
court that it intended to call Guzman as a rebuttal witness.  Out
of the presence of the jury, the prosecutor said that Guzman would
testify that Rodrguez had admitted lying to her but had not
offered any reason for telling the lie.  The court suggested that
a stipulation could make Guzman's testimony unnecessary, and
defense counsel agreed to stipulate that Rodrguez never mentioned
to Guzman why he had lied to her.  The judge then addressed the
jury:
   THE COURT: . . . .  The stipulation is as follows:  
 When the defendant called back Sylvia Guzman [of] the
 Housing Department, he informed her he had lied about the
 $300 rent.  He did not mention why he lied, but he did
 call and told her he lied about the $300 rent.
   Is that satisfactory, counsel?
   PROSECUTOR:  Yes, and he also lied.
   DEFENSE COUNSEL:  I object.  It should have been
 done outside of the presence of the jury.
   THE COURT:  Exactly.  Approach the bench.
 In the sidebar that followed, the prosecutor explained
that she disagreed with the inclusion of "about the $300 rent" in
the stipulation.  The judge then addressed the jury again:
   THE COURT: Let me correct the stipulation . . . .
   The parties have agreed that when the defendant,
 Mr. Rodriguez, called back Sylvia Guzman of the Housing
 Department and said he had lied in the earlier interview
 he did not give any reasons to her why he lied.
   Okay, that is the stipulation.  Is that
 satisfactory?
   PROSECUTOR:  Yes, it is.
   DEFENSE COUNSEL:  Yes.
                              III
 Rodrguez contends that the statement by the prosecutor,
"and he also lied," affected the trial's outcome, and that
therefore the district judge should have granted his motion for a
new trial.  We review the denial of a motion for a new trial for
manifest abuse of discretion.  See United States v. Gonzalez-
Gonzalez, 136 F.3d 6, 12 (1st Cir. 1998).  The determination of
whether prosecutorial misconduct "has so poisoned the well that a
new trial is required," United States v. Manning, 23 F.3d 570, 574
(1st Cir. 1994) (internal quotation marks and citation omitted),
involves the weighing of several factors: "(1) the severity of the
misconduct; (2) the context in which it occurred; (3) whether the
judge gave any curative instructions and the likely effect of such
instructions; and (4) the strength of the evidence against the
defendant,"  id.; see also United States v. Auch, 187 F.3d 125, 129
(1st Cir. 1999) (similar factors).
 We examine each of the Manning factors in turn.  When
reviewing a claim of prosecutorial misconduct, we take a balanced
view of the evidence in the record.  See United States v. Roberts,
119 F.3d 1006, 1008 (1st Cir. 1997); Arrieta-Agressot v. United
States, 3 F.3d 525, 528 (1st Cir. 1993).
A. Severity of the Misconduct
 Rodrguez argues that the prosecutor's statement "and he
also lied" misled the jury into thinking Rodrguez had stipulated
to one of the elements of the first count, making a false statement
to a federal agency, when in fact the lie to which he stipulated
(that the government's chief witness had been paying him rent) was
not the lie he was charged with in the first count (that the
dwelling for which he made a claim for emergency assistance was his
primary residence at the time of the hurricane).
 Although it is conceivable that the jury might have
understood the prosecutor's remark to refer to the lie charged in
the first count, that is not a likely interpretation.  First, we
note that in this context the exact meaning of the statement "he
also lied" is far from self-evident.  "[A] court should not lightly
infer that a prosecutor intends an ambiguous remark to have its
most damaging meaning . . . ."  United States v. Lilly, 983 F.2d
300, 307 (1st Cir. 1992) (quoting Donnelly v. DeChristoforo, 416
U.S. 637, 647 (1974)) (internal quotation marks omitted).  Here,
the prosecutor made the statement immediately after the judge
presented to the jury the stipulation that Rodrguez had called
Sylvia Guzman to admit that he had lied to her in an earlier
conversation.  Under these circumstances, the most plausible
conclusion is that the prosecutor's remark ("he also lied")
referred to some aspect of Rodrguez's conversations with Guzman.  
That conversation did not have to do with the lie Rodrguez was
charged with in the first count.
 Second, this is not a case in which the prosecutor's
alleged misconduct was "pervasive," see Manning, 23 F.3d at 575, or
"repeated," see Auch, 187 F.3d at 129.  The fact that the
challenged statement was an isolated remark made during a four-day
trial weighs heavily against a finding that the alleged misconduct
was severe.  See United States v. Palmer, No. 99-1260, 2000 WL
126615, at *2 (1st Cir. Jan. 14, 2000) ("As a one-time misstatement
at the end of a four-day trial, the prosecution's comment was
neither so egregious nor so pervasive as to poison the well.")
B. Context
 The context of the prosecutor's statement also weighs
against a conclusion that a new trial is required.  Challenged
comments are considered in their broader context, not in isolation.  
See Auch, 187 F.3d at 129.  As the government points out in its
brief, the context here is one in which the defendant himself
repeatedly said in front of the jury that he had lied.  While being
questioned by his own attorney, Rodrguez stated three times that
he had lied to Guzman in order to help Carrin.  During cross-
examination, he acknowledged again that he had lied to Guzman.   
Furthermore, the prosecutor's statement was made between the
judge's presentation of two versions of the stipulation, both of
which stated that Rodrguez had told Guzman that he had lied to
her.  In a context in which the defendant repeatedly stated that he
had lied, and even stipulated to the fact, the cumulative impact of
the prosecutor's remark is negligible.
C. Curative Instructions and Strength of the Evidence Against the
Defendant
 In light of the limited severity of the misconduct and
the context in which it occurred, the last two factors can be dealt
with briefly.  First, while in some circumstances the lack of a
curative instruction may weigh in favor of a new trial, see, e.g.,
Manning, 23 F.3d at 575, we do not believe it does here.  Although
the judge gave no curative instructions per se, he expressed his
agreement with defense counsel's objection at the time the
prosecutor made the challenged remark, and later instructed the
jury that statements by counsel were not to be considered as
evidence.  Second, while the evidence against Rodrguez was not
overwhelming, cf. Auch, 187 F.3d at 130, it was not so slight that
the single remark being challenged could have tipped the balance.
                              IV
 "The remedy of a new trial is rarely used; it is
warranted only where there would be a miscarriage of justice or
where the evidence preponderates heavily against the verdict."
Gonzalez-Gonzalez, 136 F.3d at 12 (internal quotation marks and  
citation omitted).  We do not condone the prosecutor's remark; as
this court has stated, it is highly improper for a prosecutor to
call a defendant a liar.  See United States v. Rodrguez-Estrada,
877 F.2d 153, 158-59 (1st Cir. 1989).  Our review of the record,
however, convinces us that the prosecutor's statement did not
affect the outcome of the trial.  The district court's denial of
Rodrguez's motion for a new trial is affirmed.

</body>

</html>